NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JESUS R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.R., *Appellees*.

No. 1 CA-JV 17-0179
FILED 9-28-2017

---

Appeal from the Superior Court in Maricopa County
No. JD32033
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

---

**D O W N I E**, Judge:

¶1        Jesus R. ("Father") appeals from an order terminating his parental rights.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        J.R. was born in January 2016.  The Department of Child Safety ("DCS") took custody of him based on a report that he and his mother had both tested positive for methamphetamine.[1]

¶3        After J.R. was released from the hospital, DCS placed him with his maternal great-grandmother.  Father visited J.R. twice before beginning a five-year prison sentence for possession or use of dangerous drugs, a class 4 felony.  While incarcerated, Father wrote to J.R. and sent funds for his support totaling $109.

¶4        On August 25, 2016, DCS moved to terminate Father's parental rights under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4).  A contested severance hearing was held, and the juvenile court thereafter terminated Father's parental rights.  We have jurisdiction over Father's timely appeal pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶5        As relevant here, a court may terminate parental rights if it finds, by clear and convincing evidence, that "the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home

---

[1]        Mother's parental rights were terminated in a separate proceeding, and she is not a party to this appeal.

for a period of years."[2]  A.R.S. § 8-533(B)(4); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005) (clear and convincing evidence standard).  Courts must consider "all relevant factors" when determining whether a prison sentence will deprive a child of a normal home for a period of years, including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251–52, ¶ 29 (2000).

¶6            Citing the *Michael J.* factors, the juvenile court found:  (1) Father never had a "real relationship" with J.R. due to his nearly continuous incarceration since the child's birth; (2) Father "has been unable and will be unable to truly parent and bond" with J.R. until his release from prison, when J.R. will be approximately five years old; (3) because Mother's rights were also terminated, there is no other parent available to provide a normal home; and (4) "Father's incarceration has and will deprive the child of a normal home for the vast majority of his young life. . . . [and] has left the child in limbo and uncertainty."

¶7            Father does not challenge any of these factual findings.  He argues instead that he has broken his "cycle of drug abuse" since being incarcerated and "has attempted to better himself, in preparation for future full time parenting."  But while such actions are laudable, the relevant focus under the statute is on the *child* and whether he will be "deprived of a normal home for a period of years."  A.R.S. § 8-533(B)(4).  The record amply supports the juvenile court's finding that J.R. needs

---

[2]      The court must also find by a preponderance of the evidence that termination is in the child's best interests.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  Because Father has not challenged the best interests determination, we do not address that requirement.  *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004) (claims not raised in an opening brief are waived).

permanency "and should not be placed on hold for an additional 3 to four years to await Father's release as well as the time necessary for Father to develop a parental bond, to demonstrate his sobriety outside of prison and to demonstrate the stability necessary to parent." This is especially true because J.R. has no other available parent and will, if required to await Father's release from prison, have been without a parent from infancy until the age of four or five.

## CONCLUSION

**¶8** For the foregoing reasons, we affirm the order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA